# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BERNICE C. ATCHISON | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-2045 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 6, 9, 17, 20 |
| | : | | |
| U.S. DISTRICT COURTS, *et al.* | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTIONS TO DISMISS

## I.  INTRODUCTION

Plaintiff Bernice C. Atchison, proceeding *pro se*, seeks damages from various Defendants associated with the series of lawsuits in this District that culminated in *In re Black Farmers Discrimination Litigation*, 856 F. Supp. 2d 1 (D.D.C. 2011).  Specifically, Ms. Atchison named as Defendants the United States District Court for the District of Columbia ("Defendant Court");[1] Stephen C. Carpenter, court-appointed Ombudsman in *In re Black Farmers Discrimination Litigation*; the law firm Conlon, Frantz & Phelan, L.L.P.;[2] James Scott Farrin;[3]

---

[1] Defendant Court states that the Complaint incorrectly identifies it as the U.S. District Court for the District of Columbus.  *See* Mem. Supp. U.S. District Court's Mot. Dismiss at 1 ("Def. Court Mem. Supp."), ECF No. 20-1.

[2] Defendant Conlon, Frantz & Phelan, L.L.P. states that the Complaint incorrectly identifies it as Conlon, Frantz & Pelham, L.L.P.  *See*  Defs.' Mot. Dismiss at 1 n.1 ("Conlon Mot. Dismiss"), ECF No. 6.

[3] Defendant James Scott Farrin states that the Complaint incorrectly identifies him as James Scott Ferrin.  *See* Conlon Mot. Dismiss at 1 n.2.

Andrew H. Marks; Henry Sanders; Gregorio Francis; Honza Prchal;[4] and the Claim Facilitator in *In re Black Farmers Discrimination Litigation*.[5]  *See* Compl., ECF No. 1.

Multiple Defendants have filed motions to dismiss the Complaint in its entirety on a variety of grounds.  For the reasons explained below, the Court finds that it does not have jurisdiction to review the decisions of another district court and that sovereign immunity bars Ms. Atchison's claims against the Defendant Court.  The Court will therefore dismiss the Complaint as to Defendant Court for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The Court also finds that Ms. Atchison's attempts to serve process were untimely.  In this situation, the Court would typically grant an extension of time for Ms. Atchison to attempt to perfect service, but an extension would be futile here because the Court finds that the Complaint fails to state a claim upon which relief can be granted.  Therefore, the Court will grant the remaining Defendants' motions and dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the same reasons, the Court will dismiss the Complaint as to the Claims Facilitator on its own initiative.

## II.  FACTUAL & PROCEDURAL BACKGROUND

Given the complex history of the litigation brought by African-American farmers against the United States Department of Agriculture ("USDA"), the Court will begin by providing a

---

[4] Defendant Honza Prchl states that the Complaint incorrectly identifies him as Honza Parsel.  *See* Conlon Mot. Dismiss at 1 n.3.

[5] The Claim Facilitator has not appeared before this Court, nor has it moved to dismiss Ms. Atchison's Complaint.  The Court notes that Ms. Atchison's Affidavit of Service states that she served the summons and Complaint on the "Claims Administrator."  *See* Affidavit of Service, ECF No. 5.  For clarity, the Court will refer to the moving Defendants as "Defendants" in this Memorandum and Opinion.

brief overview of the historical background.  The Court will then turn to Plaintiff's allegations

and the motions pending before the Court.

### A.  Historical Background

Ms. Atchison's allegations arise from the class-action litigation brought by African-

American farmers against the USDA.  *See* Compl. at 3.[6]  The Complaint refers to those cases

repeatedly, and the Court notes that it may take judicial notice of publicly filed documents in

related litigation.  *See Lewis v. DEA*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (citing *Covad*

*Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)) ("The court may take

judicial notice of public records from other court proceedings.").

On April 14, 1999, a court in this District approved a consent decree that settled a class-

action lawsuit brought by African-American farmers alleging racial discrimination by the USDA

in the application of its credit and benefits programs.  *See Pigford v. Glickman* (*Pigford I*), 185

F.R.D. 82 (D.D.C. 1999), *aff'd*, 206 F.3d 1212 (D.C. Cir. 2000).  The *Pigford I* consent decree

created a "dispute resolution mechanism" that allowed class members to file administrative

claims seeking compensation for past discrimination by the USDA.  *Id.* at 95.  *Pigford I* set a

time limit for farmers to file their claims, but many farmers attempted to file after the deadline

had passed.  *See In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 11 (D.D.C. 2011).

Congress provided a remedy to farmers with time-barred claims through a provision of

the Food, Conservation, and Energy Act of 2008 ("2008 Farm Bill").  *See id.*  That provision

states: "[a]ny Pigford claimant who has not previously obtained a determination on the merits of

---

[6] In citations, the Court will use the page numbers provided by Ms. Atchison for the ten-page Complaint.  When citing other materials attached to the Complaint, which are not paginated, the Court will rely on the page number of the full document, as filed on the Court's ECF system.

a Pigford claim may, in a civil action brought in the United States District Court for the District of Columbia, obtain that determination." *Id.* (quoting Pub. L. 110-234, § 14012(b), 122 Stat. 923, 1448 (2008)).  Through at least twenty-three complaints filed in this District, roughly 40,000 individuals brought suit under that provision, and those cases became known as *Pigford II* actions.  *See id.* at 13.  Recognizing the case management challenges posed by the *Pigford II* cases, the court consolidated all twenty-three actions into one miscellaneous case, *In re Black Farmers Discrimination Litigation*, No. 08-mc-0511 (PLF).  *See id.*

The *Pigford II* parties negotiated a settlement (the "Settlement Agreement") that was ultimately approved by the court on October 27, 2011 following a fairness hearing and the consideration of extensive written submissions by interested parties.  *See id.* at 6–7.[7]  The *Pigford II* Settlement Agreement created a two-track system for resolving claims—under Track A, any potential cash award was limited to $50,000, but the claimant faced the relatively low burden of proving her claim by "substantial evidence," while under Track B, a claimant could receive a maximum of $250,000 in cash, but she was required to prove her claim by the higher standard of the preponderance of the evidence.  *Id.* at 22–23.

Both Track A and Track B claims were evaluated by neutral third parties, the "Track A Neutral" or the "Track B Neutral," and those determinations were "final and not subject to appeal."  *Id.* at 23.  The court explicitly considered a mechanism for appealing adverse decisions and found that "[g]iven the costs and benefits of an appeal process . . . the decision . . . not to offer such a process under the settlement agreement does not make the agreement or the process it established unfair or unreasonable."  *Id.* at 36.  The D.C. Circuit dismissed consolidated

---

[7] Ms. Atchison spoke at the September 1, 2011 Fairness Hearing.  *See* Tr. of Fairness Hr'g, *In Re Black Farmers Discrimination Litigation*, No. 08-mc-0511 (PLF) (D.D.C. Sept. 1, 2011) 94:15–99:19, ECF No. 224.

appeals challenging the court's approval of the settlement.  *See Latham v. Vilsack*, Nos. 11-5326, 11-5334, 12-5019, 2012 WL 10236550, at *1 (D.C. Cir. July 25, 2012) (per curiam).

### B.  Ms. Atchison's Allegations

From the outset, the Court notes that a *pro se* complaint will be construed liberally and is held to "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Although the Complaint is occasionally difficult to follow, the denial of Ms. Atchison's Track B claim appears to form the root of her allegations.

Ms. Atchison alleges that she submitted a Track B claim under *Pigford II* and that her claim was denied by the Track B Neutral.  *See* Compl. at 3, 7–8, 23, *see also id.* at 35–36 (attaching "'Track B' Claim Determination Form").[8]  A determination letter dated July 23, 2013 explained that she "failed to prove that [she] complained of discrimination to an official of the United States government before July 1, 1997," *id.* at 36, but Ms. Atchison maintains that she had evidence to the contrary, *id.* at 3–4.  Ms. Atchison states that her claim was supported by evidence including "letters from congressmen, senators and three Presidents of the United States Government," as well as communications "with other state" and "County Officials" and Ms. Atchison's own testimony before Congress in 2004.  *Id.* at 3–4.[9]  Ms. Atchison alleges that the Track B Neutral committed "plain error" in denying her claim.  *Id.* at 3.

---

[8] The Complaint refers to the Track B Neutral as the "neutralist."  *See, e.g.*, Compl. at 3.

[9] The Complaint includes numerous attachments related to this issue.  *See, e.g., id.* at 41 (letter from Senator Richard Shelby allegedly received in 1983), 45 (letter from the White House dated September 19, 2005), 63 (letter from Senator Richard Shelby dated May 1, 2006), 66 (letter from Congressman Steve Chabot dated November 23, 2004), 119 (reference to Ms. Atchison's statement before Congress on November 18, 2004).

The Complaint further alleges that one of the attorneys designated as class counsel to assist claimants in the *Pigford II* claims process completed half of Ms. Atchison's claim form and then refused to complete the remainder of the form. *Id.* at 5. Ms. Atchison states that this action was a "dereliction of the oath he took to serve" and prevented any other attorney from assisting her in her claim. *Id.* at 5–6. Ms. Atchison also makes general complaints against class counsel, alleging that they "denied the aid and assistance that had been promised." *Id.* at 6.

Ms. Atchison alleges that Defendants' actions violated her constitutional rights, including her right to due process. *Id.* at 7–8. Further, Ms. Atchison states that the actions alleged in the Complaint constitute "FRAUD perpetrated upon the Court and the Plaintiff." *Id.* at 8. Ms. Atchison seeks $331,050 in compensatory damages and $500,000 in pain and suffering damages. *Id.* at 10.

### C.  Motions before the Court

Defendants Conlon, Frantz & Phelan L.L.P., James Scott Farrin, Henry Sanders, Gregorio Francis, and Honza Prchal (collectively, the "Conlon Defendants") move to dismiss the Complaint for insufficient service of process pursuant to Rule 12(b)(5) and for failure to state a claim pursuant to Rule 12(b)(6). *See generally* Conlon Mot. Dismiss, ECF No. 6. Defendant Andrew H. Marks moves to dismiss the Complaint for insufficient service of process pursuant to Rule 12(b)(5) and for failure to state a claim pursuant to Rule 12(b)(6). *See generally* Def. Andrew H. Marks's Mot. Dismiss ("Marks Mot. Dismiss"), ECF No. 9. Defendant Stephen Carpenter moves to dismiss the Complaint arguing that he is entitled to absolute or qualified immunity for actions taken as court-appointed Ombudsman, as well as for insufficient service of process pursuant to Rule 12(b)(5) and for failure to state a claim pursuant to Rule 12(b)(6). *See generally* Mot. Def. Stephen Carpenter Dismiss Compl., ECF No. 17. Defendant Court moves to

dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), for

insufficient service of process pursuant to Rule 12(b)(5), and for failure to state a claim pursuant

to Rule 12(b)(6).  *See* Def. U.S. District Court's Mot. Dismiss, ECF No. 20 ("Def. Court Mot.

Dismiss").  These motions are now fully briefed and ripe for decision.[10]

## III. DISCUSSION

Defendants move to dismiss the Complaint in its entirety on a number of grounds,

arguing, among other things, that:  The Court lacks subject matter jurisdiction over claims

against Defendant Court, Plaintiff's service of process was untimely, the method of Plaintiff's

service of process was insufficient as to certain Defendants, and the Complaint fails to state a

claim upon which relief can be granted.  The Court first considers the question of subject matter

jurisdiction, and finds that it has no jurisdiction to review the judicial acts of other district courts

and that sovereign immunity bars claims against Defendant Court.  Next, the Court finds that

---

[10] The Court reminded Ms. Atchison of her obligation to respond to two of the motions to dismiss.  *See* Order, ECF No. 8 (noting obligation to respond to Conlon Mot. Dismiss); Order, ECF No. 11 (noting obligation to respond to Marks Mot. Dismiss).  Ms. Atchison responded with filings styled as motions to deny the motions to dismiss, which the Court, construing *pro se* filings liberally, will treat as oppositions to the motions.  *See* Pl.'s Mot. Deny Defs.' Mot. Dismiss ("Pl.'s Aug. 26 Opp."), ECF No. 12 (opposing Conlon Mot. Dismiss); Pl.'s Mot. Deny Def.'s Andrew H. Marks Mot. Dismiss, ECF No. 14 (opposing Marks Mot. Dismiss).  Ms. Atchison also filed two responses that appear to oppose all of the motions to dismiss generally (ECF Nos. 18 & 22), three responses opposing Mr. Carpenter's motion to dismiss, (ECF Nos. 23, 26, & 27), and an opposition to Defendant Court's motion to dismiss (ECF No. 28).  Each movant filed a reply in support of their motion.  *See* Defs.' Reply Pl.'s Mot. Deny Mot. Dismiss, ECF No. 13 (filed by Conlon Defendants); Reply Mem. Supp. Def. Marks Mot. Dismiss, ECF No. 15; Def. U.S. District Court's Reply Br. Further Supp. Mot. Dismiss, ECF No. 24; Reply Mem. Supp. Mot. Def. Stephen Carpenter Dismiss Compl., ECF No. 25.  Because of confusion on the Court's ECF system as to which of the motions one of Ms. Atchison's filings addressed, Mr. Carpenter filed a brief, initial reply out of "an abundance of caution."  *See* Reply Mem. Supp. Mot. Def. Stephen Carpenter Dismiss Compl. at 1–2, ECF No. 21.  Because Mr. Carpenter's second, full reply was timely filed in response to Ms. Atchison's opposition to his motion, the Court will consider the more complete reply.

service was untimely, but that it would ordinarily grant an extension of time for Ms. Atchison to perfect service.  Here, however, an extension would be futile because the Court finds that, as to the remaining Defendants, the Complaint fails to state a claim upon which relief can be granted. Thus, the Court will grant the motions to dismiss and dismiss the Complaint as to all Defendants.

### A.  Subject Matter Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendant Court moves to dismiss the Complaint because this Court lacks subject matter jurisdiction.  *See* Def. Court Mot. Dismiss at 1.  Specifically, Defendant Court argues that Ms. Atchison does not have constitutional standing, that a district court does not have the authority to review the decisions of other district courts, and that sovereign immunity bars Ms. Atchison's claims.  *See* Mem. Supp. U.S. District Court's Mot. Dismiss at 7–9 ("Def. Court Mem. Supp."), ECF No. 20-1.  This Court is not a reviewing court, and it does not have subject matter jurisdiction to review the decision of other district courts.  Even if review were permitted, the Court finds that it does not have subject jurisdiction over claims against Defendant Court because the United States has not waived sovereign immunity in this context.  Thus, the Court will dismiss Ms. Atchison's Complaint as to Defendant Court pursuant to Rule 12(b)(1).[11]

### 1.  Applicable Legal Standard

As previously stated, a *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  But even *pro se* litigants "must comply with the

---

[11] Because the Court finds that it has no jurisdiction to review the judicial acts of a sister court and that sovereign immunity bars Ms. Atchison's claims against Defendant Court, there is no need to address the other arguments related to subject matter jurisdiction.

Federal Rules of Civil Procedure." *Idrogo v. Foxx*, 990 F. Supp. 2d 5, 6 (D.D.C. 2013) (citing *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987)).

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  It is the plaintiff's burden to establish that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).  To determine whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

## 2.  Analysis

Defendant Court argues that it "is axiomatic that a district court lacks subject matter jurisdiction to review the decisions of other district court[s]" and this Court agrees.  *See* Def. Court Mem. Supp. at 7.  The federal district courts "generally lack[ ] appellate jurisdiction over other judicial bodies, and cannot exercise appellate mandamus over other courts." *United States v. Choi*, 818 F. Supp. 2d 79, 85 (D.D.C. 2011).  This Court's jurisdiction is drawn from the same statutory sources as its sister courts, both in this District and elsewhere.  *See* 28 U.S.C. §§ 1331, 1332; *see also Ortiz v. Pratter*, No. 15-cv-0481, 2015 WL 1546252, at *1 (D.D.C. Apr. 3, 2015) ("The Eastern District of Pennsylvania and this Court have the same jurisdiction conferred by 28 U.S.C. §§ 1331, 1332.").  Therefore, this Court has no subject matter jurisdiction to reconsider the decisions of other federal district courts. *See Fleming v. United States,* 847 F. Supp. 170, 172

(D.D.C. 1994) (first citing *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983); and

then citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415, 416 (1923)).  Thus, to the extent Ms.

Atchison objects to any decision of the court in the *Pigford II* litigation, her proper remedy was

an appeal of that decision.  The Court finds that it has no subject matter jurisdiction to hear

claims against Defendant Court that attack the judicial acts of a sister court in a prior case.

Even if this Court had jurisdiction to review the decisions of other district courts,

Defendant Court correctly argues that sovereign immunity bars Ms. Atchison's claims.  In her

Complaint, Ms. Atchison alleges constitutional violations and seeks money damages.  *See*

Compl. at 8–9 ("Due process was broken and the [Constitutional] Right to be heard [was]

denied . . . .").  Defendant Court argues that the federal "government has not waived its

sovereign immunity for claims for money damages in this context."  Def. Court Mem. Supp. at 9.

Sovereign immunity shields the federal government and its agencies from suit and is

"jurisdictional in nature." *Am. Road & Transp. Builders Ass'n v. EPA,* 865 F. Supp. 2d 72, 79

(D.D.C. 2012) (quoting *FDIC v. Meyer,* 510 U.S. 471, 475 (1994)) (other citations omitted).  "If

sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for

lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200

(D.D.C. 2013) (citing *Meyer*, 510 U.S. at 475) (other citations omitted).  The government may

waive immunity, but such a waiver "must be unequivocally expressed in statutory text, and will

not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).  To survive a

motion to dismiss under Rule 12(b)(1), "[t]he plaintiff bears the burden of establishing both the

court's statutory jurisdiction and the government's waiver of its sovereign immunity." *Am. Road*

*& Transp. Builders Ass'n*, 865 F. Supp. 2d at 80 (first citing *Kokkonen v. Guardian Life Ins. Co.*,

511 U.S. 375, 377 (1994); then citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d

571, 575 (D.C. Cir. 2003); and then citing *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006)).

Although Ms. Atchison bears the burden of establishing the government's waiver of sovereign immunity, she has failed to identify any such waiver. The Court agrees with Defendant Court and finds that the government has not waived its sovereign immunity in this context. The D.C. Circuit has explained that "suits for damages against the United States under . . . the Constitution are barred by sovereign immunity." *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010); *see also Clark v. Library of Congress*, 750 F.2d 89, 102–04 (D.C. Cir. 1984). Ms. Atchison does not present any authority to the contrary.[12]

A number of other courts have found that sovereign immunity bars claims such as these against the U.S. District Courts, and this Court agrees. *See, e.g.*, *Norman v. U.S. District Court*, No. 97-16918, 1998 WL 405860, at *1 (9th Cir. July 8, 1998) (per curiam) (suit against the "United States District Court" was "properly dismissed . . . on the basis of sovereign immunity"); *Gregory v. United States*, 942 F.2d 1498, 1499–1500 (10th Cir. 1991) (affirming dismissal of claims against federal district and bankruptcy courts based on sovereign immunity); *Edlund v. Montgomery*, 355 F. Supp. 2d 987, 991 (D. Minn. 2005) (dismissing *Bivens* claim against district court based on sovereign immunity); *Raskiewicz v. Mental Health Servs. of Mont.*, No. CV-09-16-BU-RFC, 2010 WL 288795, at *2 (D. Mont. Jan. 22, 2010) ("[A]ll claims against the United

---

[12] Although Ms. Atchison does not refer to the Administrative Procedure Act ("APA"), Defendant Court correctly argues that the APA does not waive the federal government's immunity from suit for claims seeking monetary damages. The APA provides a limited waiver of sovereign immunity in certain contexts, but the statute explicitly exempts "the courts of the United States" from its definition of the term "agency," 5 U.S.C. § 701(b)(1)(B), and the statute only allows for "relief other than money damages," 5 U.S.C. § 702. *See also Emory v. United Air Lines, Inc.*, 720 F.3d 915, 921 (D.C. Cir. 2013) (stating that APA does not waive sovereign immunity for an action seeking damages against the United States).

States District Court should be dismissed with prejudice as the United States has not waived its sovereign immunity for this action.").

For these reasons, the Court concludes that Ms. Atchison has failed to meet her burden of establishing subject matter jurisdiction or the federal government's waiver of sovereign immunity.  Accordingly, the Court will dismiss Ms. Atchison's Complaint against Defendant Court pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B.  Service of Process

Pursuant to Federal Rule of Civil Procedure 12(b)(5), all Defendants move to dismiss the Complaint because of deficiencies in Ms. Atchison's service of process.  The Defendants argue that Ms. Atchison's attempts to serve process were untimely, and some further argue that her method of service was insufficient.  The Court finds that Ms. Atchison's service was untimely, but, in light of her *pro se* status, the Court would ordinarily grant an extension of time to allow Ms. Atchison to attempt to perfect service.  Here, however, the Court finds that an extension would be futile, because the Complaint fails to state a claim as to the remaining Defendants and will be dismissed on the merits.

### 1.  Applicable Legal Standard

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  When the propriety of service is challenged, "[b]y the plain text of Rule 4, the plaintiff has the burden to 'demonstrate that the procedure employed to deliver the papers satisfies the requirement of the

relevant portions of Rule 4.'" *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (citation omitted).

Parties proceeding *pro se* "are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993) (citations omitted). This latitude, however, "does not constitute a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure." *Id.* (quoting *Jarrell v. Tisch,* 656 F.Supp. 237, 239 (D.D.C. 1987)).

### 2. Analysis

Each of the remaining Defendants argues that Ms. Atchison's Complaint must be dismissed pursuant to Rule 12(b)(5) because her attempted service took place after the 120-day clock required by Federal Rule of Civil Procedure 4(m). *See* Defs.' Statement P. & A. Supp. Mot. Dismiss ("Conlon Statement") at 4, ECF No. 6-1 (227 days or later); Mem. P. & A. Supp. Mot. Def. Marks Dismiss ("Marks Mem.") at 5, ECF No. 9-1 (231 days); Mem. L. Supp. Mot. Def. Stephen Carpenter Dismiss Compl. ("Carpenter Mem.") at 9 n.6, ECF No. 17.[13]  In response, Ms. Atchison seeks to explain her delay, but does not contest the timing of her attempted service. *See* Pl.'s Mot. Deny Defs.' Mot. Dismiss ("Pl.'s Aug. 26 Opp.") at 9–10, ECF No. 12; Pl.'s Resp. Defs. Mem. Opp. Mot. Dismiss ("Pl.'s Oct. 1 Opp.") at 1, ECF No. 22. Three of the remaining Defendants—Conlon, Frantz & Phelan, L.L.P.; Mr. Carpenter; and Mr. Marks—also argue that the method used to effect service, even if it had been timely, was insufficient under Rule 4(e). *See* Conlon Statement at 4–6; Marks Mem. at 6–13; Carpenter Mem. at 7–11. Four of the remaining Defendants—Mr. Farrin, Mr. Sanders, Mr. Francis, and

---

[13] The Court notes that Defendant Court also contends that Ms. Atchison's attempt to effect service on it was untimely. *See* Def. Court Mem. Supp. at 10.

Mr. Prchal—concede that Ms. Atchison's method of service was permitted under the state law where service took place, but maintain that the Complaint should be dismissed because of Ms. Atchison's delay.  *See* Conlon Statement at 5 nn.3–5 (conceding that "Atchison's service via certified mail seems to have comported with" the service laws of Alabama, Florida, and North Carolina).

Because all of the remaining Defendants argue that Ms. Atchison's attempted service, whether substantively sufficient or not, occurred outside the 120-day window, the Court will first turn to the question of timeliness.  Federal Rule of Civil Procedure 4(c) provides that "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)."  Fed. R. Civ. P. 4(c).  At the time the Complaint was filed, Rule 4(m) provided that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[14]  Fed. R. Civ. P. 4(m).  "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  *Id.*

Here, there is no doubt that Ms. Atchison attempted to serve each Defendant outside of the 120-day window.  Ms. Atchison filed her Complaint on December 1, 2014, but no summonses were issued until July 8, 2015.  *See* ECF Docket Entry dated July 8, 2015; *see also* ECF Docket Entry dated Dec. 4, 2014 (stating that no summonses were issued).  At that time, 219 days had already passed since Ms. Atchison filed her Complaint.  Ms. Atchison's own Affidavit of Service states that the various Defendants were served between July 16, 2016 and

---

[14] The current version of Rule 4(m) took effect on December 1, 2015 and requires the plaintiff to serve the summons within 90 days, instead of 120, but the difference is immaterial here.

July 23, 2016.  *See* Affidavit of Service, ECF No. 5.  Ms. Atchison explains that she did not

"deliberately or otherwise violate the 120 day timeframe."  Pl.'s Aug. 26 Opp. at 9.  She

contends that she requested the summonses in December 2014 when she filed the Complaint, and

made repeated efforts to contact the Clerk of the Court.  *Id.*  Ms. Atchison explains that after

filing the Complaint she learned that the case was assigned to Judge Boasberg.  *See* Pl.'s Oct. 1

Opp. at 1.  She called the Clerk of the Court in March 2015, requested that the summonses be

issued, and "was told they were waiting on an order from Judge Friedman."  *Id.*  Ms. Atchison

again called the Clerk of the Court in May 2015 and then the summonses were issued on July 8,

2015.  *Id.*  A letter from Ms. Atchison to the Court appears to confirm that she called the Clerk of

the Court on May 11, 2015.  *See* Letter, ECF No. 3.  Ms. Atchison states that she "followed the

instructions as sent from the court; step by step, the best I could with no advice or adequate

professional legal help."  Pl.'s Oct. 1 Opp. at 1.

     Still, Ms. Atchison does not dispute that her attempts to serve the Defendants took place

long after the 120-day clock had expired.  Thus, the Court finds that Ms. Atchison failed to serve

Defendants within the 120-day period following the filing of her Complaint.  This finding does

not, however, require the dismissal of Ms. Atchison's Complaint.[15]  Although "[d]istrict courts

do not need to provide detailed guidance to *pro se* litigants," they should at least give those

parties "minimal notice of the consequences of not complying with procedural rules."  *Moore,*

994 F.2d at 876.  This principle "does not constitute a license for a plaintiff filing *pro se* to

ignore the Federal Rules of Civil Procedure," but it does "recognize the importance of providing

---

[15] Because the Court would grant an extension pursuant to *Moore* and its progeny if the extension would not be futile, the Court need not consider whether Ms. Atchison has shown "good cause for the failure."  Fed. R. Civ. P. 4(m); *see also Mann*, 681 F.3d at 374–76 (finding that a district court can grant an extension of time in the absence of good cause, but leaving open the question of what standard should guide the application of that discretion).

*pro se* litigants with the necessary knowledge to participate effectively in the trial process." *Id.* (citations omitted).

Pursuant to *Moore*, courts in this District have not applied Rule 4(m) rigidly, "where courts have not first informed *pro se* plaintiffs of the consequences of failing to effect proper service and where defendants are in no material way prejudiced by a minor defect in the manner in which service of process was attempted." *Lindsey v. United States*, 448 F. Supp. 2d 37, 47 n.6 (D.D.C. 2006) (citations omitted).   A long line of cases show that courts routinely provide notice to *pro se* plaintiffs before dismissing their complaint for service deficiencies.   *See, e.g.*, *Magowan v. Lowery*, No. 15-cv-917, 2016 WL 778351, at \*16 (D.D.C. Feb. 29, 2016); *Nabaya v. Dudeck*, 38 F. Supp. 3d 86, 96–97 (D.D.C. 2014); *Moore v. Bush*, 601 F. Supp. 2d 6, 9 n.1 (D.D.C. 2009); *Dominguez v. District of Columbia*, 536 F. Supp. 2d 18, 23 (D.D.C. 2008); *Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d 181, 186–89 (D.D.C. 2008); *Lindsey*, F. Supp. 2d at 47.

Because the Court did not previously warn Ms. Atchison of the consequences of failing to perfect service of process, and because it is clear that all the Defendants appearing received actual notice, the Court will not dismiss Plaintiff's Complaint for this service defect.   Instead, the Court would typically grant a brief extension of time to bring the contested but untimely attempts to serve process within the Rule 4(m) window and to allow Ms. Atchison to attempt to perfect service of process.   Here, however, such an extension would be futile, because the Court finds that the Complaint fails to state a claim as to the remaining Defendants.[16]   *See Magowan*, 2016 WL 778351, at \*17 (dismissing claims for failure to state a claim after denying dismissal of

---

[16] Because the Court determines that granting an extension of the Rule 4(m) clock would be futile, the Court need not address the sufficiency of the contested attempts to serve Mr. Carpenter, Mr. Marks, and Conlon, Frantz & Phelan, L.L.P.

rectifiable procedural defects); *Dominguez*, 536 F. Supp. 2d at 22 ("If dismissing the claim

without prejudice due to insufficient service would lead to the refiling of a meritless claim . . .

our Circuit has held that it is proper to consider other means of dismissing the case.") (citing

*Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 369–70 (D.C. Cir. 1997)).  This approach is

in harmony with the D.C. Circuit's admonition that "strong policies favor the resolution of

genuine disputes on their merits."  *See Jackson v. Beech*, 636 F.2d 831, 832 (D.C. Cir. 1980).

### C.  Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the remaining Defendants move to

dismiss the Complaint because it fails to state a claim upon which relief can be granted.  Even

taking as true all facts alleged in the Complaint, its attachments, and the oppositions filed by Ms.

Atchison, the Court finds that Plaintiff has failed to state a claim upon which relief can be

granted.  Thus, the Court will dismiss Ms. Atchison's Complaint as to the remaining Defendants

pursuant to Rule 12(b)(6).[17]

#### 1.  Applicable Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain

statement of the claim" to give the defendant fair notice of the claim and the grounds upon which

it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam).

A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success

on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v.

Rhodes,* 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457

U.S. 800 (1982).  A court considering such a motion presumes that the complaint's factual

---

[17] Because the Court finds that the Complaint fails to state a claim against Mr. Carpenter, there is no need to address his arguments related to absolute or qualified immunity.  But the Court notes that an immunity defense may also be meritorious.

allegations are true and construes them liberally in the plaintiff's favor. *See, e.g., United States v. Philip Morris, Inc.,* 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal,* 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations, *see Twombly,* 550 U.S. at 555.

A court cannot consider matters outside the pleadings in deciding a Rule 12(b)(6) motion, but it may consider "documents attached as exhibits or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)). Further, a *pro se* plaintiff's pleadings must be "considered *in toto*" to determine whether they "set out allegations sufficient to survive dismissal." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015) (reversing the district court because it failed to consider allegations found in a *pro se* plaintiff's opposition to a motion to dismiss). In deciding a motion to dismiss under Rule 12(b)(6), the Court may also take judicial notice of facts litigated in a prior related case. *See Oveissi v. Islamic Republic of Iran,* 879 F. Supp. 2d 44, 49–50 (D.D.C. 2012).

When a plaintiff alleges fraud, the complaint must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Pro. 9(b). This heightened pleading standard requires a complaint to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citations omitted).

### 2. Analysis

The Complaint does not list specific counts or claims. The Court, however, seeks to draw out Ms. Atchison's claims and construe her *pro se* Complaint liberally. Because of Ms. Atchison's *pro se* status, the Court also considers claims found in her oppositions to the motions to dismiss.

#### a. Review of Track B Determination

Ms. Atchison seeks review of her Track B determination, which forms the primary basis for her Complaint. The first sentence of Ms. Atchison's Complaint refers to "manifested Errors" in the determination of her Track B claim. Compl. at 2. The Complaint goes on to describe the *Pigford II* claims process and, referring to documents filed in prior litigation, argues that Ms. Atchison's claim was wrongly denied and that the Track B Neutral's decision was "plain error." *Id.* at 2–4. Ms. Atchison repeatedly refers to this Court as an "appeals court," and it is clear that the appellate remedy she seeks is the reversal of the Track B Neutral's determination. *See, e.g.*, Pl.'s Mot. Deny Defs. Andrew H. Marks. Mot. Dismiss at 1, ECF No. 14; Pl.'s Reply Defs. Mot. Deny Dismissal ("Pl.'s Sept. 17 Opp.") at 1, ECF No. 18; Pl.'s Resp. Defs. Mot. Dismiss at 2, ECF No. 23. Even Ms. Atchison's damages calculation appears to be linked, in some way, to the total amount of money available to Track B claimants. *See* Compl. at 9.

Ms. Atchison has previously attacked the denial of her Track B determination in a motion

filed in the *In re Black Farmers Discrimination Litigation.  See* Mot. Correct Unjust Rulings, *In*

*re Black Farmers Discrimination Litigation*, No. 08-mc-0511 (PLF) (D.D.C. Dec. 27, 2013)

("Mot. Correct Unjust Rulings"), ECF No. 391 (attached to Compl. at 31).  That motion asked

the court to "correct the error in the decision" of the Track B Neutral.  *Id.* at 1.  The court denied

Ms. Atchison's motions, as well as a number of similar *pro se* filings.  *See In re Black Farmers*

*Discrimination Litigation*, 29 F. Supp. 3d 1 (D.D.C. 2014), ECF No. 401.[18]  The court cited

Section V.A.8 of the Settlement Agreement, which states that determinations pursuant to the

claims process "are final and are not reviewable by . . . the Court, or any other body, judicial or

otherwise."  *Id.* at 2.[19]  The court noted that finality was an important factor considered by the

parties during the settlement negotiation process, and that absent the Settlement Agreement, "the

amount of relief attainable by members of the plaintiff class would have been less than ten

percent of what has actually been made available."  *Id.* at 4.  The court concluded "that it [had]

no authority to require reconsideration of the denied claims."  *Id.* at 5.

This Court must reach the same conclusion.  The Settlement Agreement is clear:  Track B

determinations are not subject to review.  *Id.* at 2.  Furthermore, this Court's review of the Track

B determination would be particularly inappropriate.  Plaintiff's objections were previously

heard and denied by the court in *In re Black Farmers Discrimination Litigation*, and this Court

---

[18] Ms. Atchison's motion did not specify that her claim was a Track B claim (although the attachment to her motion did), and the court treated it as a Track A claim.  The court stated, however, that its reasoning was "equally true of the claim determinations issued by the Track B Neutral."  *Id.* at 4.  Ms. Atchison's Complaint refers to this Memorandum Opinion and Order. Compl. at 3.

[19] The full Settlement Agreement is available online at https://www.blackfarmercase.com/Documents/SettlementAgreement.pdf.  *See also* Settlement Agreement, *In Re Black Farmers Discrimination Litigation*, No. 08-mc-0511, ECF No. 170-2.

has no authority to upset that ruling.  First, this Court "is not a reviewing court" and has no authority "to review the decisions of another district court."  *Robinson v. King*, No. 14-cv-0901, 2014 WL 2696735, at *1 (D.D.C. May 28, 2014).  Second, the principle of res judicata requires that "the parties to a suit . . . are bound by a final judgment and may not relitigate any ground for relief which they have already had an opportunity to litigate."  *Bailey v. DiMario*, 925 F. Supp. 801, 810 (D.D.C. 1995) (citations omitted).  The final approval of the Settlement Agreement at issue is a final judgment for res judicata purposes, and this Court will not interfere with that judgment.  *Id.* (citing *United States v. Southern Ute Indians*, 402 U.S. 159, 174 (1971)).  Even accepting all facts in the Complaint as true, the Court finds that Ms. Atchison's request for review of her Track B claim determination does not state a claim upon which relief can be granted.

### b.  Alleged Constitutional Violations

Ms. Atchison refers to a number of constitutional rights in her Complaint and in her various oppositions to the motions to dismiss.  The Complaint alleges that Defendants' actions violated her constitutional rights, including her right to due process.  Compl. at 7–8; *see also id.* at 8–9 ("Due process was broken and the [Constitutional] Right to be heard [was] denied. . . .").  One of the attachments to Ms. Atchison's Complaint, an undated letter to the Court, provides the clearest statement of her constitutional claims.  *Id.* at 18–19.  Ms. Atchison alleges that the Court refused "to give redress when there is ample evidence to prove Constitutional rights violations."  *Id.* at 18.  Ms. Atchison also alleges that the Court "deprived me of a good life, liberty and prosperity without giving Due Process of the law. . . . [T]here is no just compensation for this Claimant [f]or the crimes USDA admitted committing against me."  *Id.*  Ms. Atchison also objected to the "compulsory process" of the prior proceeding, where she "had no legal

representation . . . breaking [her] constitutional right." *Id.* at 19. Finally, Ms. Atchison alleges that an unnamed law firm failed to preserve her right to trial under the Seventh Amendment and that the equal protection guarantees of the Fourteenth Amendment were violated. *Id.*

Other constitutional claims are found in Ms. Atchison's oppositions, which the Court must also consider in this context. *See Brown*, 789 F.3d at 151. Ms. Atchison contends that she had a "constitutional right to legal aid and assistance on the Merits of this case; whereby I was wrongly denied in 7g of the claim." Pl.'s Reply Rem. Opp. Stephen Carpenter's Mot. Dismiss at 1, ECF No. 27. Ms. Atchison also states that Defendant Court "was well aware of the errors made in this case the judge modified the law for [counsels] but as the fiduciary and the gatekeeper of the constitution of this case he FAILED and so did the Defendants. The constitution gives Atchison a right to be heard under due process." Pl.'s Aug. 26 Opp. at 11.

Again, Ms. Atchison's Complaint does not state a claim upon which relief can be granted. At this stage, the Court must accept all well-pleaded facts as true, but it is not required to accept a plaintiff's legal conclusions. *See Iqbal*, 556 U.S. at 678. Thus, the Court finds that the Complaint's purely conclusory statements about due process and other constitutional rights are not sufficient to support a claim for relief. *See Farmer-Celey v. Appeals Court of D.C. Judges*, No. 09-cv-0429, 2009 WL 581476, at *1 (D.D.C. Mar. 5, 2009).

Other claims couch Ms. Atchison's request for review of her Track B claim determination in constitutional terms. For the reasons previously stated, this Court has no authority to overturn the Track B determination or the Settlement Agreement that created the claims process. For example, Ms. Atchison appears to argue that the claim structure created by the Settlement Agreement was an improper "compulsory process" that violated her constitutional right to due process, and presumably, her Seventh Amendment right to a jury trial. *See* Compl.

at 47. In the exhaustive opinion approving the Settlement Agreement, the court noted that some

class members argued that "the class is too broad because it does not permit any individual

falling within its definition to opt out of the class and, by extension, out of the settlement

agreement." *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 32 (D.D.C. 2011).

The court noted that restricting opt-outs was constitutional and found that permitting opt-outs

would be "contrary to the interests of the plaintiffs' class as a whole and cannot be permitted."

*Id.* This issue, and other objections to the structure and procedures of the claims process created

by the Settlement Agreement, should have been raised in the prior litigation and pursued on

direct appeal. In fact, Ms. Atchison did object to those procedures in a filing that the court

construed as a motion for reconsideration of its order approving the Settlement Agreement. *See*

Mot. Correct Unjust Rulings. That motion was denied, *see In re Black Farmers Discrimination*

*Litigation*, 29 F. Supp. 3d at 5, and the D.C. Circuit dismissed consolidated appeals of the district

court's approval of the Settlement Agreement. *See Latham v. Vilsack*, Nos. 11-5326, 11-5334,

12-5019, 2012 WL 10236550, at *1 (D.C. Cir. July 25, 2012) (per curiam). This Court has no

authority to amend those rulings by requiring additional procedural protections, not created by

the Settlement Agreement.

Additionally, many of Ms. Atchison's constitutional claims appear to be addressed to

Defendant Court. Even if any of the constitutional allegations stated a claim against Defendant

Court, those claims would be barred by sovereign immunity. Finally, Ms. Atchison appear to

suggest that she had a constitutional right to counsel during the Track B determination process or

in the prior litigation in this District. In fact, the Supreme Court has not recognized a general

right to counsel in civil cases. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 26–27 (1981)

("[W]e thus draw from [Supreme Court precedent] the presumption that an indigent litigant has a

right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."). Nor does the Settlement Agreement create a right of counsel for claimants proceeding under Track B for the reasons explained below.  For the foregoing reasons, the Court finds that the Complaint fails to state a constitutional claim upon which relief can be granted.

### c.  Class Counsel's Failure to Represent Ms. Atchison in Her Track B Claim

Ms. Atchison alleges that class counsel involved in *In re Black Farmers Discrimination Litigation* are liable because they refused to represent her during the Track B claim process and thus failed to provide "the aid and assistance that had been promised."  Compl. at 6.  In a letter attached to her Complaint, Ms. Atchison describes her efforts to acquire counsel to represent her in her Track B claim.  *Id.* at 37.  Ms. Atchison met and spoke with numerous attorneys, some of whom are named as Defendants here, but they all stated that they were "not qualified" to work on Track B claims and sought to direct Ms. Atchison to another attorney or firm.  *Id.* at 37–38; *see also* Pl.'s Aug. 26 Opp. at 10 ("Atchison then contacted six of the law firms that claims gave her asking for relief and was told by each firm that they were not trained to process B claims."). The Complaint includes a letter that appears to confirm her meeting with Mr. Prchal and to show that David J. Frantz, an attorney at Defendant Conlon, Frantz & Phelan L.L.P., informed Ms. Atchison that he was "not representing claimants in Track B claims."  Compl. at 44.

Ms. Atchison points to various letters and statements to establish the professional responsibilities of class counsel.  First, Ms. Atchison attaches letters from various law firms that either make an offer of representation or state that the firms are already representing her in the *Pigford* proceedings.  Pl.'s Aug. 26 Opp. at 17–18.  Referring to one of those letters, Ms. Atchison argues that the named firms "had a professional duty to the plaintiff" which they failed to uphold when they refused to represent her in her Track B claim.  Pl.'s Rep. Mem. Opp. Def.

Courts' Mot. Dismiss, at 2, ECF No. 28.  Second, Ms. Atchison points to statements made at the fairness hearing and in the claim package the Claims Administrator sent to her.  Ms. Atchison cites the transcript of the fairness hearing and states that "defendants agreed to provide legal assistance to all claimants who requested their help and by doing so, they had a legal obligation to . . . represent all claimants . . . whether they had an A or B claim."  Pl.'s Sept. 17 Opp. at 3. During the fairness hearing, Mr. Sanders stated, "we expect . . . [every claimant] would have the opportunity to have a face-to-face meeting with class counsel," and Mr. Marks stated, "[a]ny class member can meet with a lawyer, have the advice of a lawyer, and will have to pay nothing if they use class counsel."  Pl.'s Oct. 1 Opp. at 5–6.[20]  Ms. Atchison also refers to the November 14, 2011 claim package, *see* Pl.'s Aug. 26 Opp. at 7, which states that class counsel "are available to assist you in preparing your Claim Form at no charge to you."  *Id.* at 16.

Even taking all of these facts as true, the Complaint fails to state a claim on this issue. First, Ms. Atchison does not show how class counsel's representation of Ms. Atchison in the *Pigford* proceedings could create an obligation to represent her in her Track B claim.  Class counsel's obligations during the claim determination process are determined by the Settlement Agreement.  *See* Settlement Agreement, *In Re Black Farmers Discrimination Litigation*, No. 08-mc-0511 (PLF) (D.D.C. May 13, 2011) ("Settlement Agreement"), at 33–36, ECF No. 170-2. The Settlement Agreement makes clear that class counsel must "[p]rovide representation without additional charge to Claimants who elect to submit claims under Track A."  *Id.* at 33.  The Settlement Agreement contains no similar requirement for Track B claims.  *See also In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d at 41 (Class counsel "will offer legal

---

[20] The full transcript of the fairness hearing transcript can be found at Transcript of Proceedings before Judge Paul L. Friedman, *In Re Black Farmers Discrimination Litigation*, No. 08-mc-0511 (PLF), at 15, 33, ECF No. 224.

representation during the claim determination process, *for no additional fee*, to any Track A claimant who requests it."). At most, class counsel were required to "[a]nswer Class Member questions." Settlement Agreement at 34. Ms. Atchison does not appear to allege that Defendants failed to answer her questions.[21] In fact, she provided documentation of her communications with a number of class counsel. *See* Compl. at 37–38, 44; Pl.'s Aug. 26 Opp. at 10.

The obligations created by the Settlement Agreement are clear, despite what appear to be overbroad statements made at the fairness hearing and in the claims package. The purpose of the fairness hearing was to consider the Settlement Agreement, which was complete and available for review. Statements made during that proceeding cannot modify the written document itself. To the extent Ms. Atchison objects to the terms of that agreement, this Court has no authority to modify them, for the reasons previously stated. Thus, the Court finds that Ms. Atchison's allegation that class counsel failed to represent her in her Track B claim fails to state a claim upon which relief can be granted.

### d. Allegations Related to Mr. Prchal

The Complaint and Ms. Atchison's various oppositions also allege specific misconduct by a single attorney, Mr. Prchal. The Complaint asks how Ms. Atchison could have anticipated that an attorney, who remains unnamed in the Complaint itself, "would do half of your claim, give it back to you in front of two witnesses, and tell you he is not qualified to do your B claim?" Compl. at 5. An attachment to Ms. Atchison's Complaint provides additional information about

---

[21] Even assuming that statements at the fairness hearing could create an obligation for class counsel to provide a face-to-face meeting with *Pigford II* claimants, the Court notes that Ms. Atchison was able to meet with Mr. Prchal and others on March 6, 2012. Compl. at 37. Although Mr. Prchal did not agree to represent Ms. Atchison, he did meet with her and forward her files to another law firm. *Id.*

this allegation.  *Id.* at 37.  According to Ms. Atchison, she met with Mr. Prchal on March 6,

2012, and he began to fill out his contact information on Ms. Atchison's claim form.  *Id.*  At

some point during the meeting, Mr. Prchal stated that he was not qualified to work on a Track B

claim, discussed the matter with another attorney, and convinced Ms. Atchison to allow him to

forward Ms. Atchison's materials to David J. Frantz, an attorney at Conlon, Frantz & Phelan

L.L.P.  *Id.*  Ms. Atchison attached a copy of her claim form, which includes Mr. Prchal's contact

information and his bar number, which has been crossed out.  *Id.* at 100.

   Ms. Atchison alleges that, by placing his bar number on her claim form, Mr. Prchal

"den[ied] Atchison access to any other lawyers."  Pl.'s Aug. 26 Opp. at 7.  Ms. Atchison states

that no other attorney would take her case, because "[n]o one wanted to accept his negligence; he

had not adequately processed the claim."  *Id.*  In an attachment to her Complaint, Ms. Atchison

explains that, after Mr. Prchal put his contact information and bar number on the claim form, it

became impossible for her to "receive help from another attorney because of the liability, under

Supreme Court Rule 100-us-195."  Compl. at 27.  In *National Savings Bank v. Ward*, printed at

100 U.S. 195, the Supreme Court held that a client could bring a negligence claim against his

attorney, but the attorney had no duty to non-clients.  *See* 100 U.S. 195, 199–200 (1879).  The

case shows that a client can bring suit against a negligent attorney, but it does not suggest that an

initial attorney's negligence prevents a subsequent attorney from taking over the case.

   In fact, Ms. Atchison pleads no facts supporting this theory.  After Mr. Prchal

forwarded Ms. Atchison's materials to Conlon, Frantz & Phelan, L.L.P., David Frantz explained

that he would not take her case, not because of Mr. Prchal's actions, but because he was "not

representing Track B claims in this case."  Compl. at 44.  Similarly, taking Ms. Atchison's

allegations as true, none of the other law firms she contacted raised concerns with Mr. Prchal's

actions.  Instead, they stated they were not taking any Track B claims, because they were "not

qualified," *id.* at 37–39, or "were not trained to process B claims," Pl.'s Aug. 26 Opp. at 10.

Thus, even accepting the truth of Ms. Atchison's allegations, Mr. Prchal's actions did not prevent

Ms. Atchison from acquiring another attorney to represent her in her Track B claim.  Therefore,

the Court finds that Ms. Atchison's allegation against Mr. Prchal fails to state a claim upon

which relief can be granted.

### *e. Allegations of Fraud*

The Complaint also appears to allege that some or all of the Defendants may have

defrauded Ms. Atchison.  Specifically, the Complaint appears to ask whether the denial of her

Track B claim "[w]as . . . a preconceived idea to Defraud?"  Compl. at 4–5.  The Complaint also

contends that the allegations set forth "appear to be FRAUD perpetrated upon the Court and the

Plaintiff."  *Id.* at 8.  Federal Rule of Civil Procedure 9(b) creates a heightened pleading standard

for allegations of fraud and requires a complaint to "state with particularity the circumstances

constituting fraud or mistake."  Fed. R. Civ. Pro. 9(b).  Specifically, the Plaintiff must allege "the

time, place and content of the false misrepresentations, the fact misrepresented and what was

retained or given up as a consequence of the fraud," as well as the individuals involved.

*United States ex rel. Williams*, 389 F.3d at 1256 (citations omitted).  Ms. Atchison's complaint

fails to meet this heightened standard.

As noted by multiple Defendants, the text of Ms. Atchison's Complaint does not

specifically refer to some of the Defendants.  *See* Marks Mem. at 3; Carpenter Mem. at 6.  Even

considering all of the information found in the Complaint, the Complaint's attachments, Ms.

Atchison's various oppositions, and the attachments to those oppositions, Ms. Atchison's

allegations, accepted as true, cannot be construed to support a claim of fraud.  Ms. Atchison does

not state with any specificity who precisely was involved in the alleged fraud, when the fraud

occurred, or what fact was misrepresented.  *See United States ex rel. Williams*, 389 F.3d at 1256–

57.  Furthermore, the nebulous, off-hand references to fraud do not specify who was set to

benefit from the alleged scheme.  *Id.*  The Complaint's vague, unsupported references to fraud

fail to give the Defendants sufficient information to answer the Complaint.  *Id.* at 1257.  For

these reasons, the Court finds that any allegation of fraud does not meet the heightened pleading

standard of Rule 9(b) and fails to state a claim upon which relief can be granted.

After considering all of Ms. Atchison's claims, construed liberally in light of her *pro se*

status, the Court finds that the Complaint fails to state a claim upon which relief can be granted.

Therefore, the Court will dismiss the Complaint as to all of the remaining Defendants.[22]

---

[22] Although the Claim Facilitator has not appeared before this Court or moved to dismiss Ms. Atchison's Complaint, the Court will dismiss all claims against it *sua sponte*.  The Court does not need to wait for a formal motion under Rule 12(b)(6), and may instead dismiss a Complaint on its own initiative, if the plaintiff "cannot possibly win relief."  *See Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994) (quoting *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990) (per curiam)); *see also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016) ("[T]he district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").  Ms. Atchison's Complaint, which does not target particular claims at particular Defendants, fails to state a claim against the Claim Facilitator for the same reasons it fails to state a claim against the moving Defendants.  Although a court is not required to provide notice to a plaintiff before dismissing a complaint *sua sponte*, *see Baker*, 916 F.2d at 726, any possible fairness concerns are mitigated here because Ms. Atchison had the opportunity to file extensive briefing in opposition to the various motions to dismiss.  For these reasons, the Court will dismiss the claims against the Claim Facilitator on its own initiative.  *See Moore v. Motz*, 437 F. Supp. 2d 88, 90 (D.D.C. 2006) (granting motions to dismiss and dismissing *sua sponte* claims against non-moving defendants); *Price v. Coll. Park Honda*, No. 05-cv-0624, 2006 WL 1102818, at *7 n.4 (D.D.C. Mar. 31, 2006) ("The Court *sua sponte* dismisses the claim with respect to defendant Sheraton Broadway Plantation, which has not filed a motion to dismiss (or appearance) in this matter.").

**IV.  CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendant Court's Motion to Dismiss (ECF No. 20) and dismiss the Complaint as to Defendant Court pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.  The Court will also **GRANT** the Motions to Dismiss filed by the Conlon Defendants, Mr. Marks, and Mr. Carpenter (ECF Nos. 6, 9, and 17) and dismiss the Complaint as to the remaining moving Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  On its own initiative, the Court will also dismiss the Complaint as to the Claim Facilitator for failure to state a claim.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 27, 2016                                        RUDOLPH CONTRERAS
                                                            United States District Judge